SAMUEL B. MICHAELS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 20, 1904.*

1. EVIDENCE—*unauthenticated files of alleged suit in foreign State not admissible.* Unauthenticated papers purporting to show the commencement of an attachment suit before a justice of the peace in a foreign State, the garnishment of money of defendant and settlement of the suit are not admissible in evidence to prove such facts.

2. CRIMINAL LAW—*when giving instruction as to effect of confession is error.* Giving an instruction stating the legal effect of a confession of guilt is error, where the effect thereof is to mislead the jury into believing that alleged admissions of facts criminating in their nature amount to a confession.

3. SAME—*confession defined.* A confession is a voluntary declaration by a person charged with crime of his agency or participation in the crime, and not merely a declaration or admission of facts criminating in their nature or tending to show guilt.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

JOSEPH A. WEIL, for plaintiff in error.

H. J. HAMLIN, Attorney General, and W. V. TEFFT, State's Attorney, (GEORGE B. GILLESPIE, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error was convicted in the circuit court of Peoria county upon an indictment charging him with forging a check in the name of C. Schilling & Co., of SanFrancisco, California, on the Third National Bank of SanFrancisco, dated October 10, 1901, for $75, payable to the order of W. E. Hull.

The evidence tended to prove that on the date of the check a person representing himself to be Mr. Schilling, of Schilling & Co., of SanFrancisco, California, gave to

William E. Hull, manager of Clarke's distillery, at Peoria, an order for one hundred barrels of Clarke's rye whisky, to be shipped to SanFrancisco; that this person bought in Peoria three or four diamonds, amounting to $150, and afterward stated that the purchase made him short of money and he must wire for funds to get to Denver; that Hull offered to let him have money, and he drew the check in question, for which Hull gave him $75. The defendant was arrested in Memphis, Tennessee, on January 24, 1903, and was brought to Peoria, where the trial took place in November, 1903. The principal question of fact was the identity of the defendant with the person who drew the check, and upon that subject the evidence was contradictory. He was identified with more or less certainty by several persons who saw the man who drew the check in Peoria, while some others failed to identify him as such person. There was evidence, consisting of the book of the hotel where he boarded and the testimony of witnesses, that on the date of the check he was staying at said hotel in Chicago with his wife.

We are of the opinion that the defendant did not have a fair trial, and that the judgment must be reversed on account of prejudicial error in the admission of evidence and in giving an instruction at the request of the People. Joseph Farnbacher, of Memphis, Tennessee, was called as a witness for the People, and testified that he was a clerk and deputy sheriff in the office of F. W. Davis, a justice of the peace in that city. He produced several papers purporting to be the files of an attachment suit for $75 brought by said W. E. Hull against the defendant before said F. W. Davis, as a justice of the peace, and testified to the signatures of the justice subscribed to the same. The papers consisted of an affidavit for a writ of attachment signed by W. E. Hull and sworn to before the said F. W. Davis, a bond, a writ of attachment issued by Davis, a return by the sheriff showing service, and that he garnisheed the State National Bank, and a statement

signed by the bank that there was $1000 to the credit of
the defendant in the bank.    There was a memorandum
on the process which the witness testified that he had
written: "Settled by the defendant paying into court the
amount of debt and costs this 26th day of January, 1903."
He testified that he went over to the city prison, where
the defendant was confined, and brought him into the
justice court to his attorney, and after a consultation
the attorney paid into court the amount for which the
suit was begun, and costs.    These papers were then of-
fered in evidence and were admitted over the objection
of the defendant.    The papers were not authenticated
in any manner, and there was no attempt to authenticate
them, under the act of Congress or otherwise.    There was
no evidence that F. W. Davis was a justice of the peace
in Tennessee, and our courts do not even take judicial
notice who are justices of the peace within this State
beyond the county where the court is held.    There was
no evidence as to the jurisdiction of justices of the peace
in that State, and the alleged files of the suit were not
admissible in evidence.    (*Brackett* v. *People*, 64 Ill. 170.)
The defendant testified that he was not out of the jail
on that day; that he was never in the office of the jus-
tice of the peace; that if the money was paid it was by
his intended bondsman as a deposit and security for the
claim.    The reply made on behalf of the People is, that
the papers were admissible because they were not in-
tended to prove a judgment against the defendant, but
merely to prove the settlement of the suit by payment
of the amount for which the writ was issued, and costs.
We do not understand that the nature of the inference
to be drawn from evidence affects the competency of the
evidence or dispenses with the necessity of legal proof of
facts.    The papers were offered to prove the commence-
ment of the attachment suit before a supposed justice of
the peace in another State, the garnishment of moneys
of the defendant in the bank, and the settlement of the

suit by paying the amount demanded and costs of the proceedings. They were not legal evidence of such facts.

The court gave to the jury the following instruction at the instance of the People:

"The jury are instructed that if you believe, from the evidence, beyond a reasonable doubt, that the defendant has made any confession of the crime charged in this indictment, freely and voluntarily, that confession, if so proven, is of itself sufficient to warrant the conviction of defendant, if you otherwise believe, from the evidence, beyond all reasonable doubt, that the crime charged was committed by some one."

There was no evidence that the defendant had made any confession of the crime charged in the indictment, but, on the contrary, the evidence for the People was that he constantly denied that he was guilty. There was, however, evidence which it was proper for the jury to consider on the question of guilt or innocence, to which the instruction would naturally be applied by the jury. When the defendant was arrested at a hotel in Memphis he was taken to the room of J. P. Carter, a traveling salesman for the distillery firm, and he was there accused of the crime. William E. Hull testified that when taken to the room the defendant said, "What is all this about?" that witness said, "Mr. Schilling, you know what it is about; you forged a check on me for $75;" that defendant denied it, and said his name was not Schilling but was Michaels, and said, "Why, Mr. Hull, I will give you back your $75;" that he talked with the detectives and said he would like to fix it up, and said, "Mr. Hull, I will give you ten times that amount to settle this up." Carter testified that the defendant asked why he was arrested, and Hull said, "You passed a bogus check on me at Peoria;" that defendant said, "Can this thing be fixed up?" and also asked what was the amount of the check, and was told that it was $75. Ike Wolf, a detective, testified that when defendant was called Schilling, he said,

"My name is not Schilling;" that defendant then asked Hull what this was for, and Hull said, "You passed a bogus check for $75 on me at Peoria;" that defendant then said, "Can't this be fixed up?" that Hull said, "No," and defendant then said, "I will pay ten times $75." W. S. Lawless testified that defendant wanted to know what was the matter, and witness addressed him as Mr. Schilling; that defendant said his name was not Schilling but was Michaels; that defendant was told he was arrested for passing a bogus check, and he asked how much it was, and he said he could fix that up—that he would even give ten times that amount. The defendant denied that he offered to settle or fix the matter up, and his version of the conversation was, that he sent for the proprietor of the hotel and asked him to go his security for $75; that some one said it would take more, and he said he would furnish security for ten times that amount. The proprietor of the hotel testified that when he was sent for, defendant asked him if he would go his security for $75; that one of the officers said that would not cover the amount of the claim, and that defendant said he could give ten times that amount. This, with the evidence before referred to of settling the claim before the justice, did not amount to a confession, which is a voluntary acknowledgment of a person charged with the commission of crime that he is guilty of the offense. It is a voluntary declaration by a person charged with a crime of his agency or participation in the crime. (8 Cyc. 562.) It is not equivalent to statements, declarations or admissions of facts criminating in their nature or tending to prove guilt. It is limited in its meaning to the criminal act, and is an acknowledgment or admission of participation in it. (6 Am. & Eng. Ency. of Law,—2d ed.—520; 1 Greenleaf on Evidence, sec. 170; *Johnson* v. *People*, 197 Ill. 48.) By the instruction the jury were advised that a confession by the defendant, if proved, was of itself sufficient to warrant a conviction if the *corpus delicti* were other-

wise proved. The jury would naturally assume that the testimony as to what defendant said when arrested was evidence of a confession of the crime with which he was charged, and with the evidence that the check was forged was sufficient to justify his conviction. There being no evidence tending to prove a confession it was prejudicial error to give the instruction.

The judgment of the circuit court is reversed and the cause is remanded.      *Reversed and remanded.*